IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA        :
                                :      CRIMINAL ACTION
           v.                   :      NO. 1:11-CR-028-TWT-ECS
                                :
RHETT MAUGHON,                  :
RAFAEL VILLAREAL SR.,           :
MARCUS MAUGHON                  :


**REPORT AND RECOMMENDATION**

**I.**
**Procedural Status**

This matter is before the Court on the motions to dismiss counts 15 through 22 of the indictment filed by Defendants Rhett Maughon, Rafael Villareal Sr., and Marcus Maughon.  [Docs. 46, 50]. Defendants contend that 8 U.S.C. § 1324(a)(1)(A)(iv), the statute under which they are charged in counts 15 to 22, is (1) unconstitutionally vague and (2) violates due process "by allowing for a prosecution under one statute when the Defendants acted pursuant to a more comprehensive statutory scheme under which their conduct is completely legal." [Doc. 46, at 1].  The motions have been fully briefed and are ready for a Report and Recommendation.

**II.**
**The Charges**

Defendants are charged in Count 15 of the indictment with conspiracy to violate § 1324(a)(1)(A)(iv), for commercial advantage

and private financial gain, by encouraging and inducing seven aliens,[1] and others, to reside in the United States knowing or in reckless disregard of the fact that such residence was illegal.  In Counts 16 through 22, the indictment charges the Defendants with seven substantive counts of violation of § 1324 (a)(1)(A)(iv), again identifying the seven individual aliens in the counts by their initials.

Section 1324 (a)(1)(A)(iv) provides as follows:

Any person who . . .

(iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . .

shall be punished as provided in subparagraph (B).

### III.
### The Arguments

Defendants argue that the statute is unconstitutionally vague and void because it sets forth a "fuzzy and generalized prohibition against 'encouraging and inducing' a person to 'reside' in the United States if such person's presence here is illegal," where there is a more specific misdemeanor statute covering the same conduct under 8 U.S.C. § 1324a.  [Doc. 46, at 10-11].

---

[1]  The aliens are identified in the indictment by initials.

2

Defendants also argue that this prosecution violates due process because it violates "traditional notions of fairness inherent in our system of justice." [Doc. 46, at 13]. This argument is based upon the proposition that it is a violation of due process for the government to prosecute under § 1324(a) for "encouraging and inducing" where a separate statute, § 1324a, provides a safe harbor for employers of illegal aliens who comply with the I-9 program. [Doc. 46, at 13]. Essentially, Defendants argue that the prosecution violates their due process rights because it is simply unfair to have two statutes punishing the same conduct with disparate punishments.

The government responds by proffering facts that it intends to prove, detailing its allegations that Defendants induced aliens to reside illegally in the United States by employing them in their business, Atlanta Meat Company. The government argues that the fact that there exists an alternative statutory scheme for regulating illegal employment of aliens does not compel the finding that the alternative statute was meant to limit, repeal, or affect enforcement of the other. The government also counters the vagueness argument by asserting that the mere employment of illegal aliens is not the basis for the prosecution – that § 1324 will require the government to prove the Defendants possessed knowledge or reckless disregard for the truth in the hiring of the aliens. In

3

addition, the government submits that the terms "encourage" and "induce" are not unconstitutionally vague. [Doc. 57, at 5].

In reply, Defendants argue that the leading case relied upon by the government, U.S. v. Zheng, 306 F.3d 1080 (11th Cir. 2002), contains nonbinding dicta regarding the coexistence of the two statutes and that the government failed to respond to their arguments that the statute is unconstitutionally vague. The defendants then propose two hypotheticals which they argue demonstrate the alleged vagueness of the terms "encouraged" or "induced" in the context of this statute. [Doc. 62].

**IV.**
**Discussion**

**A. Sufficiency of the Indictment**

Although Defendant did not expressly attack the sufficiency of the indictment, the indictment in this case was sufficient to state a claim under the subject statute in Counts 15 through 22. Rule 7(c) of the Federal Rules of Criminal Procedure states that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Generally, "an indictment is sufficient 'if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double

4

jeopardy for any subsequent prosecution for the same offense.'" United States v. Woodruff, 296 F.3d 1041, 1046 (11th Cir. 2002), cert. denied, 537 U.S. 1114 (2003) (citing United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999), cert. denied, 528 U.S. 933 (1999)); see also United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983), cert. denied, 464 U.S. 917 (1983)(citing Hamling v. United States, 418 U.S. 87, 117 (1974)). "An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime." United States v. Critzer, 951 F.2d 306, 307-308 (11th Cir. 1992) (per curiam) (quoting United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985)).

"The sufficiency of a criminal indictment is determined from its face." Critzer, 951 F.2d at 307.  On a motion to dismiss the indictment, "the district court must not pierce the pleadings or make a premature resolution of the merits of the allegations." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987)(citing United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978), cert. denied, 437 U.S. 903 (1978)).  In determining whether a criminal offense has been stated, the Court must take the allegations in the indictment as true.  Cadillac Overall Supply Co., 568 F.2d at 1082; accord Torkington, 812 F.2d at 1354.

AO 72A
(Rev.8/82)

The indictment in this case is sufficient to state the offenses charged in Counts 15 through 22.  The charges are presented in the language of the statute, and the essential elements of a violation of 8 U.S.C. § 1324(a)(1)(A)(iv) are stated sufficiently to permit defendants to defend the charges and protect themselves from being placed in double jeopardy.[2]  Furthermore, the statute under which Defendants are charged, § 1324 (a)(1)(A)(iv), does not "fail() to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," as discussed more fully below. <u>United States v.  Batchelder</u>, 442 U.S. 114, 123 (1979).

**B. Void-for-Vagueness**.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983); <u>see</u>

---

[2] "The elements of § 1324(a)(1)(A)(iv) are: (1) encouraging or inducing; (2) an alien; (3) to come to, enter, or reside in the United States; and (4) knowing or in reckless disregard that the alien's coming to, entering, or residing in the United States is illegal." <u>United States v. Lopez</u>, 590 F.3d 1238, 1250 (11th Cir. 2009); <u>see</u> <u>also</u> <u>Edwards v. Prime, Inc.</u>, 602 F.3d 1276, 1293-94 (11th Cir. 2010); <u>United States v. Ndiaye</u>, 434 F.3d 1270, 1297 (11th Cir. 2006); 11th Circuit Pattern Jury Instructions 83.3, Concealing or Harboring Aliens, 8 U.S.C. § 1324(a) (Criminal) (2003) (Modified). In the instant case an additional element is that the offense was done for the purpose of commercial advantage or private financial gain.  8 U.S.C. § 1324(a)(1)(B)(i).

<u>United States v. Fisher</u>, 289 F.3d 1329, 1333 (11th Cir. 2002), <u>cert.</u> <u>denied</u>, 537 U.S. 1112, 123 S.Ct. 903, 911, 154 L.Ed.2d 786 (2003). Furthermore, because Defendants' void for vagueness challenge does not raise a First Amendment issue, it must be evaluated only as applied, in the light of the facts of the case at hand. <u>United</u> <u>States v. Hasner</u>, 340 F.3d 1261, 1269 (11th Cir. 2003); <u>United</u> <u>States v. Waymer</u>, 55 F.3d 564, 568 (11th Cir. 1995); <u>see</u> <u>United</u> <u>States v. Marte</u>, 356 F.3d 1336, 1342 (11th Cir. 2004) (quoting <u>Fisher</u>, 289 F.3d at 1333).

The constitutionality of an allegedly vague statutory standard is closely related to whether the standard incorporates a requirement of *mens rea*. As the Supreme Court stated in <u>Screws v.</u> <u>United States</u>, 325 U.S. 91, 101-102 (1945) (Douglas, J. concurring):

> A statutory requirement that an act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

In this case, in light of the facts alleged, the statutory provision is not impermissibly vague. In order to convict, the government must prove that Defendants encouraged or induced "an alien to . . . reside in the United States, knowing or in reckless disregard of the fact that such . . . residence is or will be in violation of law," or that they conspired to do so.  8 U.S.C. §

7

1324(a)(1)(A)(iv).   Contrary to Defendants' contentions, the terms "encourage" and "induce" have plain and ordinary meanings that can be understood by ordinary people.   <u>Lopez</u>, 590 F.3d at 1248-49 (affirming inclusion of "to help" in definition of "encourage" in § 1324(a)(1)(A)(iv)); <u>Ndiaye</u>, 434 F.3d at 1298 (defendant's assistance in helping obtain social security card encouraged or induced residence); <u>United States v. Panfil</u>, 338 F.3d 1299, 1301 (11th Cir. 2003) (statute proscribing "inducing" or "enticing" a minor not vague; terms had plain and ordinary meaning); <u>Zheng</u>, 306 F.3d at 1085 ("Terms that are not statutorily defined are ascribed their 'ordinary or natural meaning'"); <u>United States v. Oloyede</u>, 982 F.2d 133, 136-37 (4th Cir. 1993) (selling fraudulent documents constitutes "encouraging" under § 1324(a)).

Nor is the statute written in terms that encourage arbitrary or discriminatory enforcement.   The statute requires that only those acting with knowledge (or in reckless disregard) of the fact that the alien's residence is unlawful may be convicted.   "This scienter requirement discourages unscrupulous enforcement and clarifies [the statute]."   <u>Panfil</u> 338 F.3d at 1301; <u>see also United States v. Khanani</u>, 502 F.3d 1281, 1289 (11th 2007) (If defendant merely employed illegal aliens without knowingly encouraging or inducing them he would not have committed the offense); <u>Oloyede</u>, 982 F.2d at 137 ("[K]nowing or in reckless disregard of illegal residence means

8

guilty knowledge is a material element of offense") (internal punctuation omitted).

Defendants complain that the reach of the statute is overly broad. Nevertheless, if an employer hires an alien with knowledge or in reckless disregard of the fact that the alien is undocumented, and takes other steps, such as paying wages in cash, failing to pay employment taxes, or failing to request evidence of work authorization, then under the plain language of the statute such an employer may be found to have encouraged, induced, or helped the illegal alien to reside in the country. See Edwards, 602 F.3d at 1299 (citing cases under harboring provision). Under such circumstances, a jury, appropriately charged regarding the commonly understood meaning of "encourage" or "induce," could find that such conduct violates the statute.[3] Id. (allegations that payments were made in cash and that social security numbers and names were provided were sufficient to state harboring violation).

Here the government proffers that it will prove cash wage payments and nonpayment of corporate and payroll taxes as part of its evidence. [Doc. 57, at 2-3, 6]. More significantly for the purposes of this motion, the government submits that it will prove –

---

[3]  This does not mean that mere knowing employment of illegal aliens would *not* be sufficient to violate this provision. Whether the government can present sufficient evidence should be a matter for determination at trial.

and alleges in the indictment – that Defendants knowingly encouraged or induced aliens to reside illegally in the United States by employing them in their business. [Doc. 57, at 3, 6]. Whether the government can prove its case is a matter for trial, not pretrial dismissal. Defendants' complaints about the expansive reach of this statute should be addressed to Congress. The language of § 1324, considered in light of the statutory history, was clearly not intended to exclude employers, such as Defendants, from its ambit. See Khanani, 502 F.3d at 1288-89 (failure to give "mere employment" instruction not error); Zheng, 306 F.2d at 1085; see generally United States v. Kim, 193 F.3d 567, 573 (2d Cir. 1999); but see Zavala v. Walmart, 393 F.Supp.2d 295, 307-308 (D. N.J. 2005) (allegations that employer hired undocumented workers and knew they were unauthorized to work insufficient for civil RICO claim based on encouraging).

In short, the undersigned rejects Defendants' contention that § 1324(a)(1)(A)(iv) is unconstitutionally vague as applied to Defendants under the facts alleged in this indictment.

**C. Due Process**

Defendants' final argument is that "due process principles prohibit this prosecution." [Doc. 46, at 11]. This argument centers primarily around the fact that another statute, 8 U.S.C. § 1324a, covers the same conduct, but punishes such conduct not as a felony,

but only as a misdemeanor.  The Defendants also argue that "notions of fairness prohibit the government from prosecuting something that a different branch of government says is permissible." [Doc. 62, at 7-8].  The "different branch of government" referred to by Defendants is apparently Congress, manifested as the misdemeanor statute with its petty offense penalties and safe harbor defenses.

The misdemeanor statute, § 1324a of Title 8, "imposes on the employer obligations to refrain from knowingly employing an alien who is unauthorized to work in the United States and to verify, under penalty of perjury, that before hiring a given individual, the employer examine identification documents and conclude that those documents reasonably appear to be genuine."  _Zheng_, 306 F.3d at 1084-85; _see_ U.S.C. § 1324a(a), (b)(1).  Section 1324a authorizes the Government to prosecute employers who have engaged in a pattern or practice of violating these obligations.  The criminal sanctions prescribed for a violation of § 1324a are much less stringent than those prescribed for a violation of § 1324.  In pattern or practice cases, Section 1324a(f) provides for a criminal fine not to exceed $3000 for each unauthorized alien, and for imprisonment, not to exceed six months, for the entire pattern or practice of employing illegal aliens.

The Eleventh Circuit has addressed Defendants' first argument with regard to the dual statutory provisions in _Zheng_:

11

> Although § 1324 and § 1324a appear to cover some of the
> same conduct, 'the fact that Congress has enacted two
> sections encompassing similar conduct but prescribing
> different penalties does not compel a conclusion that one
> statute was meant to limit, repeal, or affect enforcement
> of the other.'  United States v. Kim, 193 F.3d 567, 573
> (2d Cir.1999).

306 F.3d at 1085.   Statutes may "overlap," or enjoy a "partial

redundancy," and yet be "fully capable of coexisting." Id. (citing

United States v. Batchelder, 442 U.S. 114 (1979)).  In Zheng, the

Eleventh Circuit agreed with the Second Circuit that "nothing in the

language of these two sections [Secton 1324 and 1324a] preclude[s]

their coexistence."  Id. (citing United States v.  Kim, 193 F.3d

567, 574 (2d Cir. 1999); see also Batchelder, 442 U.S. at 123-125

("This Court has long recognized that when an act violates more than

one criminal statute, the Government may prosecute under either so

long as it does not discriminate against any class of defendants.").

Defendants argue that Zheng is distinguishable because the

defendants were charged with a different crime than in this case and

because the Zheng Court's statements about the coexistence of the

two statutes was dicta and of no precedential value. [Doc. 62].  To

the contrary, however, the fact that the prosecution in Zheng was

brought pursuant to subsection (A)(i) rather than subsection (A)(iv)

of § 1324(a)(1)(A) is immaterial here.  Both provisions are under

the same statute prohibiting knowingly bringing aliens illegally

into the country and knowingly encouraging or inducing illegal

AO 72A
(Rev.8/82)

aliens to reside therein.  And in both Zheng and in this case, the
Defendants contended that they should at most be charged only under
§ 1324a.  Id. at 1084-85; see U.S.C. § 1324a(a), (b)(1).

Furthermore, contrary to Defendants' contention, the language
in Zheng regarding the interplay of § 1324 and § 1324a was not
obiter dicta.  The Court addressed defendants' contention that they
should not have been charged under the statute as an issue necessary
to be resolved on appeal.  This analysis ended with the holding that
"[t]he plain language of § 1324 does not limit its reach to certain
specific individuals, and thus, the government properly charged the
Appellees with violating this statute."  Id. at 1085, 1087.

Defendants' fairness argument is also insufficient to state a
viable claim of a constitutional dimension.  Defendants argue that
it is essentially and fundamentally unfair for an employer to be
subject to a felony charge for knowingly employing illegal aliens
under § 1324, carrying a possible 10 year sentence[4], where a charge
for the same conduct under § 1324a would involve at most a fine and
a possible six months prison term, with safe harbor provisions for
avoidance of liability.  Defendants argue that as an evidentiary
matter they can prove entitlement to the good-faith defense allowed

---

[4]  Under § 1324(a)(1)(B)(i), in the case of a violation of
subparagraph (A)(iv), wherein the violation was done for the purpose
of commercial advantage or private financial gain, which is alleged
here, the maximum term of imprisonment is ten (10) years.

13

under § 1324a – namely that they complied with § 1324a(b) by getting legitimate "I-9" documentation from their employees – and that it is unfair to deprive them of this defense and, presumably, of misdemeanor treatment, in this prosecution. According to Defendants, their I-9 compliance is a complete bar to prosecution. [Doc. 46, at 7-8].

Defendants cite cases that are not on point for an argument that ultimately would also depend upon the evidence presented at trial, namely, whether Defendants received "legitimate documentation from their employees." Contrary to Defendants' argument, however, Defendants are not unfairly deprived of presenting any evidence in defense to the instant charges that would show that they did not knowingly (or with reckless disregard) hire illegal aliens, including evidence of their compliance with an employment verification system.

Furthermore, Defendants cannot be said to have been misled as to the illegality of their alleged misconduct under either or both statutes. No one represented to Defendants that they would get a free pass to avoid prosecution under the more punitive statute. And, as has been discussed above, there is nothing inconsistent or unconstitutional about the existence of overlapping criminal provisions so long as the conduct prohibited and the punishment authorized are clearly defined. See Zheng, 306 F.3d at 1084-85;

14

<u>Batchelder</u>, 442 U.S. at 123.  Under these circumstances, Defendants'
"fundamental [un]fairness" argument must fail.  Once again, issues
about whether there should be two statutory schemes regulating the
same type of alleged misconduct should be addressed to Congress.

### IV.
### Conclusion

In conclusion, it is the recommendation of this Court that the
motions to dismiss [Docs. 46, 50] be **DENIED**. It appearing that there
are no further pretrial or discovery matters to bring before the
undersigned, it is therefore **ORDERED** that this **CASE** be and is hereby
**CERTIFIED** as ready for trial.


**SO ORDERED, REPORTED AND RECOMMENDED** this 21st day of June,
2011.

_S/ E. Clayton Scofield III_
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)