IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.   1:11-CR-028-01 |
| | ) | 1:11-CR-028-03 |
| RHETT MAUGHON & | ) | |
| MARCUS MAUGHON | ) | |

DEFENDANTS RHETT AND MARCUS MAUGHON'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
CONCERNING THE MOTION TO DISMISS

COMES NOW Defendants RHETT MAUGHON and MARCUS MAUGHON, by and through undersigned counsel, and hereby file these Objections to the Magistrate Judge's Report and Recommendation Concerning the Motion to Dismiss [Doc. #73]. Both RHETT MAUGHON and MARCUS MAUGHON, with permission, adopt the Objections to the Magistrate Judge's Report and Recommendation Concerning the Motion to Dismiss [Doc. #75] filed by co-defendant, RAFAEL VILLARREAL, SR. In that regard, and in support of their own objections, RHETT MAUGHON and MARCUS MAUGHON re-state from RAFAEL VILLAREAL, SR.'s pleading the following:

According to the R&R, the government may bring a criminal prosecution against an employer who gets seemingly appropriate documentation from an alien worker who turns out to be here illegally, even though Congress clearly provided a

"safe harbor" for such employers. As will be set out below, the Magistrate Judge erred. This Court should therefore reject the R&R and grant Defendants' Motion to Dismiss.

Defendants will review first the relevant statutory scheme. Next, Mr. Maughon and Maughon will show why this Court should dismiss the immigration violations from this case, and will demonstrate how the R&R should be rejected.

## THE STATUTORY SCHEME

Counts 15-22 from the indictment in this case allege violations of 8 U.S.C. §1324(a)(1)(A)(iv). Title 8 deals with Aliens and Nationality. The statute alleged here is found in the Subchapter on "Immigration". Specifically, this law is codified in Part VIII, the "General Penalty Provisions" for the "Immigration" Subchapter.

### A. The Statute Alleged in the Indictment

The statute alleged in the indictment is entitled "Bringing in and harboring certain aliens." The indictment makes no mention of anyone "bringing in" or "harboring" any alien. Instead, the indictment refers to one portion of subsection (a).

This statute contains five subsections. Subsection (a) deals with "Criminal penalties", subsection (b) concerns "Seizure and forfeiture", subsection (c) sets out "Authority to arrest", subsection (d) discusses the "Admissibility of videotaped

witness testimony", while subsection (e) concerns an "Outreach program" designed to educate the public about penalties for "bringing in" or "harboring" aliens.

As just noted, subsection (a) is the "penalties" part of this statute. Subsection (a)(1)(A) contains four of the crimes set out in this statute. First, it describes a crime if a person brings a known alien into the country at any place other than a designated port of entry. 8 U.S.C. §1324(a)(1)(A)(i). The next portion of subsection (a) criminalizes transporting aliens if the transporter knows or is in reckless disregard of the fact that the alien is here in violation of law. Directly following is a criminal prohibition against concealing or harboring if a person knows or is in reckless disregard of whether the alien is in the country illegally.

The fourth and final part of §1324(a) is the specific crime alleged here. It says that:

> Any person who…encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry or residence is or will be in violation of law…shall be punished as provided in subparagraph (B).

The penalties set out in subparagraph (B) generally call for a 5-year maximum for violating this part of the statute. However, if "the offense was done for the purpose of commercial advantage or private financial gain," then the potential penalty

3

jumps to 10 years. The indictment here alleges this added fact of "commercial advantage or private financial gain."

The language prohibiting one from encouraging or inducing an alien to "reside" in this country if the alien is illegal was added to this statute in 1996. Pub.L. 99-603, Section 411(a). As will be described more fully below, a more specific statute later superseded this generalized prohibition.

### B. The Immediately Following Statutes

The statutes that immediately follow §1324 are part of the Congressional scheme concerning the area of employing persons who possibly are illegal aliens. 8 U.S.C. §1324a is entitled "Unlawful employment of aliens." The next section, §1324b, is called "Unfair immigration-related employment practices."

Section 1324a was first enacted in 1986 in a comprehensive law called the "Immigration Reform and Control Act" ("IRCA"). This law created "a comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). Section 1324a, as noted above, is entitled "Unlawful employment of aliens." This statute of IRCA makes it "unlawful for a person or other entity…to hire…for employment in the United States an alien knowing the alien is an unauthorized alien." 8 U.S.C. § 1324a(a)(1), (a)(1)(A). An "unauthorized alien" is

defined as an "alien [who] is not at that time either (A)…lawfully admitted for permanent residence, or (B) authorized to be so employed by [IRCA] or by the Attorney General." § 1324a(h)(3).

IRCA also establishes an "extensive 'employment verification system,' designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States." *Hoffman Plastic*, 535 U.S. at 147, 122 S.Ct. 1275 (citations omitted). Known as the I-9 system, employers are required to verify the identity of their employees and ensure they are eligible to work in the United States by examining certain specified documents. 8 C.F.R. § 274a.2(b). IRCA establishes a list of permissible verification documents, enabling employees to prove eligibility by supplying any document on the list. 8 U.S.C. § 1324a(b)(1)(A)-(b)(1)(D). An employee who submits verification documents that "reasonably appear[ ] on [their] face to be genuine" may not be required to produce different or additional documents if such requests by employers are made for the purpose or with the intent of discriminating. §§ 1324a(b)(1)(A)(ii), 1324b(a)(6).

The I-9 program still exists, even though employers are also permitted to participate in another "pilot program" sometimes called "E-Verify". Expansion of the Basic Pilot Program to All 50 States and the District of Columbia; Providing Web-

Based Access, 69 Fed.Reg. 75, 997, 75, 998 (Dec. 20, 2004). The Attorney General may not require any person or other entity to participate in a pilot program such as "E-Verify." Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, div. C, § 402(a), 110 Stat. 3009-546, 3009-655 (1996).

Federal law exhaustively details a specialized scheme for determining whether an employer has knowingly employed an unauthorized alien. §1324a(e). An employer that does so is subject to a range of civil and criminal penalties, including fines, § 1324a(e)(4), cease and desist orders, *Id.,* and imprisonment, § 1324a(f)(1). As just noted, Section 1324a, which specifically deals with employing aliens, has its own set of criminal penalties. 8 U.S.C. §1324a(f).

> Any person or entity which engages in a pattern or practice of violations of subsection (a)(1)(A) or (a)(2) of this section shall be fined not more than $3,000 for each unauthorized alien with respect to whom such a violation occurs, imprisoned for not more than six months for the entire pattern or practice, or both, notwithstanding the provisions of any other Federal law relating to fine levels.

In other words, this law, which requires specific knowledge that the alien is not permitted to be or work in the U.S. has a maximum penalty of 6 months. In contrast, the statute alleged in the indictment, which can be violated if a person "encourages or induces" another to "reside in" this country can be violated when the defendant merely

has "reckless disregard" about the employee's immigration status.

Congress created a substantial safe harbor for employers that comply with the I-9 system.  8 U.S.C. § 1324a(b)(6)(A).  Unless an employer persists in violating IRCA after being put on notice of its noncompliance or engages in a pattern or practice of violations, § 1324a(b)(6)(B), (C), *employers who attempt to comply in good faith are protected from civil and criminal penalties under federal law, § 1324a(b)(6)(A)*.  This "safe harbor" was put into place by the 2004 amendments to this statute.  Pub. L. 104-208, Section 411(a).  The safe harbor therefore was enacted *after* the statute used by the government in this case.

Putting a further gloss on Congressional intent is the next statute, 8 U.S.C. §1324b, entitled "Unfair immigration-related employment practices."  It begins with a flat prohibition against discriminating against national origin or citizenship status in employment practices.  Relating back to the preceding statute, §1324b says it is an unfair employment practice if the employer asks for more documents than are required under the Employment Verification System.  8 U.S.C. 1324b(a)(6).  In other words, employers cannot discriminate against aliens, and cannot ask for more documents beyond those that prove the alien's identity and his or her right to work in the U.S.

Congress created a comprehensive scheme to help employers know when they are, and are not, violating criminal laws by employing illegal aliens.  There is a safe

harbor for employers who comply with the I-9 program. Furthermore, employers engage in illegal discrimination if they try to request documents beyond those required by the I-9 program. Even if an employer knowingly employs illegal aliens, such an employer faces no more than a 6-month sentence for a "pattern or practice" of employing such persons.

Comparing the statutes set out above, it is clear that the government here is trying to stretch the "harboring" statute far beyond that which was intended by Congress. Furthermore, as set out below, this particular statute violates the void-for-vagueness principles. The prosecution here is also unconstitutional in that Defendants are being prosecuted despite the I-9 "safe harbor" afforded to them by Congress.

## THE R&R ERRONEOUSLY RECOMMENDS REJECTING DEFENDANTS' ARGUMENTS

Defendants moved to dismiss the immigration counts in this case because, under the circumstances here, §1324(a)(1) is unconstitutionally vague. Additionally, under §1324a(b)(6)(A) employers who attempt to comply in good faith with the I-9 program *are protected from civil and criminal penalties under federal law*. Despite this clear language, the Magistrate concluded that it is nevertheless permissible to let the government bring a criminal prosecution against employers who complied with the I-9 program. A series of cases from the Supreme Court teach that "traditional notions of fairness inherent in our system of criminal justice" prohibit the government from

prosecuting a person or company from doing something when that same government says such actions are permissible.

## Void-for-Vagueness

The void-for-vagueness principle prohibits subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L. Ed 2d 222 (1972). This is exactly what has happened in the present case. The government has stretched a criminal statute to cover conduct that is permissible under more specific laws. The void-for-vagueness principle is specifically directed against such "arbitrary and discriminatory" prosecutions.

The statutory scheme bears repeating. The more specific scheme, found at §1324a, says that if an employer *knows* that an alien employee has no status, such an employer is only guilty of a misdemeanor. The fuzzy statute chosen by the government here, §1324(a)(1)(A), makes it a 10-year felony if a person induces or encourages an alien to reside in this country in *reckless disregard* of whether the alien has proper status. In other words, the government takes the position that the statute that specifically covers this situation, and which has a *higher* mens rea component, can be trumped by the diffuse statute alleged in the indictment. Such a tactic is impermissible under the void-for-vagueness doctrine.

The R&R suggests that the statute used in the indictment here is not "written in terms that encourage arbitrary or discriminatory enforcement." R&R, at 8. According to the Magistrate Judge, there are no constitutional concerns because §1324(a)(1)(A) has a scienter requirement which "discourages unscrupulous enforcement." *Id*. (citations and quotations omitted). The R&R fails to explain why prosecuting an employer who falls within the I-9 "safe harbor" is not an example of "unscrupulous enforcement."

The Magistrate suggests that if the evidence shows that the Defendants paid wages in cash, did not pay employment taxes or failed to request evidence of work authorization from employees who might be here illegally, then a properly instructed jury could find them guilty. *Id*., at 9. However, if Defendants establish that they *did* pay in check, *did* pay employment taxes, and *did* get appropriate work authorization documents, this Court will be pressed into a difficult situation. Defendants will have clearly made out the requirements for the I-9 "safe harbor." Despite this, the Court will have presided over a lengthy trial where the immigration charges should have never been included in the first place. In short, the R&R may place the Court in an impossible situation during the middle of the trial of this case.

Even more importantly, the R&R fails to recognize that allowing prosecutions such as the present case will permit one arm of the government to prosecute for

10

conduct that another arm allows. This is exactly the sort of arbitrary enforcement that must be thrown out under the void-for-vagueness rules.

## Due Process Principles Prohibit This Prosecution

On the one hand, Congress tells employers they are safe from prosecution if they comply with the I-9 program. Even if such an employer engages in a pattern or practice of violating this law, such an employer faces no more than a misdemeanor. On the other hand, the government contends that §1324(a)(1)(A) permits prosecution of that same employer. Such disparate approaches are prohibited by the due process clause. The R&R incorrectly suggested that this Court reject these cases.

A line of decisions from the Supreme Court discuss the defense of "fundamental unfairness." This Due Process defense is available when an official advises a defendant that certain conduct is legal, and that defendant reasonably believes the official who provided such advice.

This rule had its genesis in *Raley v. Ohio*, 360 U.S. 423 (1959). The defendants there were brought before a Commission to answer questions about possibly Communist party affiliations. The chairman of the proceedings erroneously told them that they could rely on their privilege against self-incrimination, and the defendants thereafter refused to answer questions. The defendants were later held in contempt for their silence, and the United States Supreme Court reversed their convictions. The

Court held that the government may not "convict[] a citizen for exercising a privilege which the state clearly had told him was available to him." *Id.*, at 438. The Court used the Due Process Clause as the constitutional support for its ruling. *Id.*, at 439. *See also Cox v, Louisiana*, 379 U.S. 559 (1965) (reversing conviction for picketing across from courthouse when officials had previously allowed defendant to demonstrate across from courthouse).

A subsidiary aspect of this rule was discussed in *United States v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655 (1973). The defendant corporation was prosecuted for violating environmental rules. The company wanted to present evidence about a federal agency's longstanding construction of the relevant statute, in order to show that the company was mislead about what the government considered as criminal conduct. The trial judge would not allow such evidence, and the company was convicted. The Supreme Court reversed, because the agency's prior stance had deprived the company of "fair warning as to what conduct the government intended to make criminal…" *Id.*, at 674. As a result, "…traditional notions of fairness inherent in our system of criminal justice prevent the government from proceeding with the prosecution." *Id.*

The R&R suggests that no one represented to Defendants that they would get a "free pass to avoid prosecution under the more punitive statute." Additionally, the

Magistrate ruled that "there is nothing inconsistent or unconstitutional about the existence of overlapping criminal provisions so long as the conduct prohibited and the punishment authorized are clearly defined." *Id*., at 14. The R&R is incorrect.

It is a well-settled maxim of statutory interpretation that the specific trumps the general, especially when the more general law was passed earlier. *Gilbert v. United States*, 640 F. 3d 1293 (11th Cir. 2011)(en banc) (Court refused to use generally worded and ambiguous law enacted prior to more specific statute enacted later in time.) Here, the fuzzy language that prohibits one from "encouraging" or "inducing" a human being from "residing in" this country was enacted in 1999. Five years later, Congress clearly explained that employers who in good faith get appropriate documentation from foreign workers are protected from civil and criminal penalties under federal law. 8 U.S.C. § 1324a(b)(6)(A). These two statutes cannot coexist, and the later in time specific law trumps the more general earlier statute.

These statutes cannot be reconciled.  On the one hand, an employer who in good faith gets seemingly authentic work authorization documents from an employee falls within the "safe harbor." Congress clearly told the employer that he or she will be violating the law if they ask the worker for more documents based on suspicions emanating from that employee's race or nationality. 8 U.S.C. §1324b. This statute, entitled "Unfair immigration-related employment practices," begins with a flat

prohibition against discriminating against national origin or citizenship status in employment practices. Section 1324b says it is an unfair employment practice if the employer asks for more documents than are required under the Employment Verification System. 8 U.S.C. 1324b(a)(6).

On the other hand, this same employer can easily be in "reckless disregard" as to the immigration status of an employee who shows up with seemingly authentic work authorization documents. It is well known that aliens regularly get bogus documents, and that many illegal aliens are from Mexico, Central and South America. An employer might have great suspicions about a prospective employee, but if the employee has seemingly valid documents, the employer cannot discriminate without running afoul of 8 U.S.C. 1324b(a)(6). In other words, this employer would at the same time violate the statute alleged in this case (§1324(a)(1)(A)(iv)), even though that same employer was prohibited by 1324b(a)(6) from investigating further his suspicions about a particular employee.

The tension between these statutes, along with the "traditional notions of fairness inherent in or system of criminal justice" prohibit the government from proceeding with Counts 15-22 of the indictment. As noted before, employers are clearly told that by complying with the I-9 program they can rely on the safe harbor of the comprehensive scheme created by Congress for employing aliens. However, by

relying on the part of §1324(a)(1)(A)(iv) that prohibits encouraging aliens from "residing in" this country, the government here seeks to prosecute these defendants for complying with the I-9 program. The Due Process Clause does not allow the government to take such inconsistent stands.

## CONCLUSION

The Court should reject the R&R, and should grant Defendants' Motion to Dismiss Counts 15-22 of the indictment.

Dated: This 6th day of July, 2011.

>                               Respectfully submitted,
>
>                               /s/ Wilmer Parker
>                               WILMER PARKER
>                               Georgia Bar No. 563550
>
>                               Attorney for Rhett Maughon &
>                                          Marcus Maughon

Maloy Jenkins Parker
75 14th Street, N.E.
Suite 2500
Atlanta, GA 30309
(404) 875-2700
Fax: (404) 875-8757
parker@mjplawyers.com

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 6th day of July, 2011.

                                                Respectfully submitted,

                                                    /s/ Wilmer Parker
                                                    WILMER PARKER
                                                    Georgia Bar No. 563550

                                                    Attorney for Rhett Maughon & Marcus Maughon

Maloy Jenkins Parker
75 14th Street, N.E.
Suite 2500
Atlanta, GA 30309
(404) 875-2700
Fax: (404) 875-8757
parker@mjplawyers.com